UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CINDY L. SCHULER,<br>　　　　Plaintiff, | )<br>)<br>) |
| v. | ) CAUSE NO.: 3:21-CV-65-JPK |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of<br>Social Security,<br>　　　　Defendant. | )<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], and Plaintiff's Opening Brief [DE 18], requesting that the May 19, 2020 decision of the Administrative Law Judge (ALJ) denying her claim for disability insurance benefits be reversed and benefits awarded. For the following reasons, the Court grants Plaintiff's request for remand, but declines to award benefits.

**PROCEDURAL BACKGROUND**

On January 6, 2019, Plaintiff Cindy L. Schuler filed an application for disability insurance benefits, alleging disability beginning February 1, 2017. Plaintiff's application was denied initially and on reconsideration. (AR 86-111).[1] Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on May 5, 2020. (AR 52-85). On May 19, 2020, the ALJ issued an unfavorable decision, making the following findings:[2]

　　1.　　The claimant meets the insured status requirements of the Social Security Act through June 30, 2022.

　　2.　　The claimant has not engaged in substantial gainful activity since February 1, 2017, the alleged onset date.

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

3. The claimant has the following severe impairments: fibromyalgia, headaches/migraines, cervicalgia, and bilateral mild ulnar variance/carpal tunnel syndrome/De Quervain's.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. … [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can occasionally climb ramps and stairs, she can never climb ladders, ropes or scaffolds, she can occasionally balance, stoop, kneel, crouch and crawl, she can frequently handle and finger with the bilateral upper extremities, and she should avoid concentrated exposure to unprotected heights and unguarded moving machinery.

6. The claimant is capable of performing past relevant work as a Maintenance Service Dispatcher, DOT# 239.367-014, semi-skilled, SVP 3, sedentary per DOT, performed at sedentary by the claimant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2017, through the date of this decision.

(AR 12-23).

Plaintiff appealed, but the Appeals Council denied review. (AR 1-3). Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as

2

adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for benefits, a claimant must establish that she suffers from a "disability," defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments

meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff asserts five grounds for reversal of the ALJ's decision: that the ALJ erred in assessing Plaintiff's mental impairments, failed to properly evaluate her migraines, misconstrued the opinion evidence, made a flawed assessment of her credibility, and that the appointment of a previous Commissioner renders the ALJ's decision constitutionally defective. Although the issues overlap somewhat, the Court finds that the first two issues justify remand, and will not attempt to resolve the remaining arguments.

**I.      Plaintiff's Mental Impairments.**

Plaintiff first argues that the ALJ failed to properly account for her mental impairments. At the outset, the Court notes that the ALJ was faced with inconsistent and at times confusing evidence on this issue. During the application process, Plaintiff reported that she was having panic

attacks and was so depressed that she was unable to complete activities of daily living. (AR 257, 262). Plaintiff said she became more depressed and anxious because of her declining physical health. She also reported poor memory and concentration and difficulty following instructions. (*See*, *e.g.*, AR 239-40). At the hearing, she testified that on a bad day she would "lay [all day] and just think [w]hat my life used to be, where it is now, and get scared that – my [physical] pain gets so bad sometimes, I feel like I'm dying." (AR 68-69). She rated her depression as a seven or eight out of ten. (AR 68).

Her medical records show that during the period at issue, she complained inconsistently of depression, and was trying different medications. In August 2017, her primary care doctor, William Rauh, reported that she "does well on her current meds." (AR 324-25 (referring to citalopram)). In August 2018, he reported she "does well with her herb combination," including omega 3 fish oil. (AR 336, 338-39). In February 2019, her depression was "stable," but in April 2019, she complained of "ongoing" panic attacks (AR 518-24). In February 2020, her neurologist suggested a psychiatry consultation but Plaintiff wanted "to wait." (AR 551). In short, the medical records did not necessarily demonstrate that Plaintiff was unable to complete daily activities because of depression.

In April 2019, Plaintiff underwent a consultative examination by Dr. Russell Coulter-Kern. Plaintiff was tested on her memory, judgment, and insight, and showed logical and consistent thought, but was "tearful at times." (AR 496-498). The doctor concluded: "[I]t appears that [Plaintiff] will not have difficulty understanding, remembering, and carrying out instructions. [Plaintiff] will not have difficulty maintaining attention and concentration. [Plaintiff] will not have difficulty responding appropriately to supervision and coworkers in a work setting. [Plaintiff] *may have difficulty coping appropriately to work pressures*." (AR 499) (emphasis added). At the

5

bottom of his report, Dr. Coulter-Kern wrote "Diagnostic impression is: 296.22 Major Depressive Disorder, Single Episode, Moderate." (*Id.*).

At step two, the ALJ found that Plaintiff's mental impairments were "non-severe" (AR 15), which means they did "not significantly limit [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). Specifically, Plaintiff had no more than mild limitations in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (AR 15). The ALJ concluded: "[Plaintiff] functioned fairly well without outpatient psychiatric treatment such as therapy or counseling, and her mental status did not appear to significantly deteriorate when she did not take her prescription medication." (AR 17). The ALJ further found that her "statements concerning the intensity, persistence and limiting effects of these symptoms" – including testimony about her worsening memory and focus – were "not entirely consistent with the medical evidence and other evidence in the record."[3] (AR 18). Accordingly, there were no mental limitations of any kind in the RFC. (*See* AR 17).

Plaintiff objects to the ALJ's treatment of Dr. Coulter-Kern's opinion. First, she argues that the diagnosis of "296.22 Major Depressive Disorder, Single Episode, Moderate" contradicts the finding of only "mild" limitations at step two. In the social security context, "mild" and "moderate" have distinct meanings. *See* 20 C.F.R. 404, Subpt. P, App. 1, § 12.00(F)(2) ("mild" means "slightly limited" functioning, while "moderate" means "fair" functioning). The Court's research suggests

---

[3] Plaintiff objects that the ALJ used the wrong standard in stating that her testimony was "not entirely consistent" with the other evidence. The correct standard is less rigorous: whether the allegations "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 404.1529(c)(4), 416.929(a), 416.929(c)(4); *see, e.g., Minger v. Berryhill*, 307 F. Supp. 3d 865, 871 (N.D. Ill. 2018). Nonetheless, this boilerplate language is problematic only "when the ALJ substitutes it for a proper, full-bodied explanation of why credibility is lacking." *Hammerslough v. Berryhill*, 758 F. App'x 534, 539 (7th Cir. 2019). Although this case is remanded on other grounds, the Court notes that the ALJ discussed her findings with reference to medical evidence (*see* AR 16-20), and it does not appear that the ALJ imposed a "not entirely consistent" standard.

that the diagnosis of moderate major depressive disorder, with the number 296.22, refers to the ICD-9-CM diagnosis code, used for billing and classifying illnesses.[4] That does not necessarily contradict a finding of "mild" limitations, because it is not clear that "moderate" means the same in ICD-9-CM as in the social security context. And as the Commissioner points out, a diagnosis of "moderate" depression does not necessarily imply "moderate" work-related limitations. (Resp. Br. 17-18); *see, e.g.*, *Amy A. v. Kijakazi*, No. 1:21-CV-240, 2022 WL 1963641, at *4 (N.D. Ind. June 6, 2022) ("Dr. Ray and Dr. Fawver both diagnosed Plaintiff with Recurrent Major Depression . . . [b]ut a diagnosis alone does not establish the existence of an impairment.") (citing *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) ("It was Weaver's burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work.")).

Nonetheless, the ALJ's analysis of the opinion was incomplete. The ALJ found the opinion "persuasive," because it reflected "generally normal status findings" consistent with the record. (AR 16). But among those normal findings, the doctor stated that Plaintiff "may have difficulty coping appropriately to work pressures." (AR 499).[5] The ALJ recited that statement as one of the doctor's "persuasive" findings (AR 16), but did not reconcile it with the conclusion that Plaintiff's mental impairments created no significant limitations in work or in "adapting or managing

---

[4] *See* http://www.icd9data.com/2015/Volume1/290-319/295-299/296/296.22.htm ("ICD-9-CM codes are used in medical billing and coding to describe diseases, injuries, symptoms and conditions.") (last visited July 7, 2022); https://www.cdc.gov/nchs/icd/icd9cm.htm ("The International Classification of Diseases, Ninth Revision, Clinical Modification (ICD-9-CM) . . . is the official system of assigning codes to diagnoses and procedures associated with hospital utilization in the United States.") (last visited July 7, 2022).

[5] The doctor's findings closely aligned with the criteria for mental impairments to be considered at step two. *Compare* (AR 499) with 20 C.F.R. 404, Subpt. P, App. 1, § 12.00(F)(2) (the criteria) and (AR 16) (the ALJ's findings). The criteria are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. The doctor found that she *could* "understand[], remember[], and carry[] out instructions"; "maintain[] attention and concentration"; and "respond[] appropriately to supervision and coworkers in a work setting"; but she "may have difficulty coping appropriately to work pressures."

7

[her]self." (AR 15). While "an ALJ does not need to discuss every piece of evidence in the record," she "must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

The ALJ's discussion did not explain this contradiction. For example, the ALJ cited Dr. Rauh's notes indicating that at various points Plaintiff's depression was "do[ing] well" and "stable." (AR 16 citing, *e.g.*, AR 324, 336, 518). Plaintiff was not working at the time (*see* AR 71), and there is no apparent evidence that the doctor meant (or believed) that she could adapt to pressure or changing circumstances. The notes do not discuss her mental health in depth or explain what "doing well" or "stable" means, and most of them were made in the context of treatment for other ailments. They are certainly evidence of some level of mental health, but by themselves they do not preclude work-related limitations.[6]

The ALJ also cited these notes from other doctors and examiners about Plaintiff's mental health:

- "In July 2017, August 2017, September 2017, January 2019, April 2019, August 2019, and February 2020, [rehabilitation physician] David J. Lutz, M.D., described the claimant as pleasant, cooperative, and not in apparent distress" (citing, *e.g.*, AR 351, 355, 358, 360, 551, 578, 605);

---

[6] *See Derek N. v. Kijakazi*, No. 121CV00737SEBMJD, 2022 WL 1558432, at *5 (S.D. Ind. Apr. 27, 2022) ("Critically, none of the providers in question were treating Claimant for mental health issues; the notations about Claimant's mental health status are therefore highly unlikely to reflect any actual examination or consideration by the health care provider."); *Donley v. Berryhill*, No. 1:17-CV-00430-SLC, 2018 WL 5839856, at *8 (N.D. Ind. Nov. 8, 2018); *Conner v. Apfel*, No. 98 C 7625, 1999 WL 495646, at *5 (N.D. Ill. June 28, 1999) ("Dr. Mutua is a family practitioner, not a psychiatrist. . . . [h]is description of Conner's mental state consists of one word, "good," and the report indicates that Dr. Mutua performed no tests of Conner's mental condition.").

- "[I]n January 2019 Madhav H. Bhat, M.D., a neurologist, recorded the claimant was awake, oriented, followed simple commands, had an adequate fund of knowledge, normal speech, and a normal mood and affect" (citing AR 363);

- "[I]n March 2019, physical consultative examiner Jason Childress, M.D., noted she answered all questions, made eye contact with the examiner, was well-groomed, alert, and oriented to person/place/time" (citing AR 484-495);

- "[I]n May 2019, [orthopedic physician] Mitchell Oetken, D.O., described her as alert, oriented x3, and not in acute distress" (citing AR 507);

- "In January 2020, when she sought emergency department treatment for foot pain, her speech, mood, behavior, thought content, and judgment were normal" (citing AR 562);

- "During February 2020 neurological follow-ups with Pamela McMaster, FNP-C, the claimant was alert and oriented x4" (citing AR 548, 569)[7].

(AR 16-17). As with Dr. Rauh's records, these notes suggest a basic level of mental health, but not much else. *See James W. v. Saul*, No. 19 C 1758, 2021 WL 197426, at *5 (N.D. Ill. Jan. 20, 2021) (ALJ failed to explain why physician's observation of "cooperative, appropriate mood and affect" undermined evidence of mental illness). And the doctors seeing her for other purposes – such as the emergency room doctor and physical consultative examiner – were probably not attempting to diagnose mental illness. *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) ("[T]here is no reason to expect a doctor asked about an eye problem, or a back pain, or an infection of the urinary tract to diagnose depression. He is not looking for it, and may not even be competent to diagnose it.")

---

[7] The ALJ omitted that, at these two visits, Plaintiff was recorded as "Alert, oriented x4, *mildly depressed affect*" (AR 548), and "alert, oriented x4, *tearful, depressed affect*." (AR 569) (emphases added).

9

(citations omitted). There is no "logical bridge" from this evidence to the conclusion that Plaintiff could adapt to pressures in the workplace, especially when the only doctor who examined[8] Plaintiff suggested that she may have difficulty in that area. For that reason, remand is required.

Generally, the ALJ seemed to view these instances of Plaintiff appearing "pleasant," or not in "acute distress," as undermining the existence of any mental impairment. Those observations are relevant, but being pleasant to a doctor for a few minutes is not dispositive of mental illness. *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) ("[The ALJ] thought the medical witnesses had contradicted themselves when they said the plaintiff's mental illness was severe yet observed that she was behaving pretty normally during her office visits. There was no contradiction."); *Rosalyn L. v. Saul*, No. 3:19-CV-345, 2020 WL 614648, at *11 (N.D. Ind. Feb. 10, 2020) ("[T]here is a vast difference between the doctor's office and the workplace and remaining calm for 20-40 minutes in a therapeutic environment is not the same as tolerating an 8-hour workday."). On remand, the ALJ must consider that "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."

---

[8] Two state agency doctors reviewed Plaintiff's records, including Dr. Coulter-Kern's examination, and opined that she had no more than "mild" restrictions in mental functioning. (*See* AR 90-93, 104-07). However, the ALJ did not rely on those reports in her analysis of mental impairments. (*See* AR 15-17). The Commissioner attempts to impute reliance on these opinions (Resp. Br. 17), but she cannot defend the ALJ's decision based on reasons the ALJ did not provide. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("[T]he only thing that cast doubt on [the claimant's] complaints were reports by two nonexamining physicians that the administrative law judge did not see fit even to mention. The [Commissioner] relied heavily on those reports in her brief and at argument . . . but in doing so she violated the *Chenery* doctrine which forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced.") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88, (1943)).

Further, the opinions are internally inconsistent in that they acknowledge Plaintiff's depression as a "severe" impairment, which "significantly limits [a person's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(c). The opinions suffer the same issue as the ALJ's decision: they do not explain how the doctors went from the evidence of plaintiff's difficulty responding to work pressures to the conclusion that those issues were no worse than "mild." (*See* AR 92-93, 105-07).

*Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *see also Phillips v. Astrue*, 413 F. App'x 878, 886 (7th Cir. 2010); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).

**II.        Plaintiff's Migraines.**

The case is remanded based on Plaintiff's mental impairments, but the ALJ's treatment of Plaintiff's migraines would also require remand. Plaintiff complained inconsistently about migraines until January 2019, when she began care with neurologist Madhav Bhat. (*See* AR 19). Plaintiff told Dr. Bhat that she was suffering moderate to severe throbbing headaches daily, which worsened six or seven times per month. (AR 362). From that point, she saw his assistant, nurse practitioner Pamela McMaster, at least four times over the following twelve months. In April 2019, the nurse noted Plaintiff's report of severe migraines occurred twice per week for 12 hours, with nausea and sensitivity to light. (AR 592). In May 2019, migraines were "occurring 3/4x per week and last[ing] 8-12 hrs" with nausea and sensitivity to light. (AR 588). In August 2019 the headaches were "occurring 4x/wk but they seem to be less severe and are shorter in duration." (AR 573). In February 2020, the nurse reported that headache "severity has lessened but frequency has not." (AR 568). At the May 5, 2020 hearing, Plaintiff testified she had migraines four to five times a week for twelve hours each, and stayed in bed on those days. (AR 63-64).

The ALJ remarked that Plaintiff's migraine complaints "could suggest her headache limitations resulted in off-task behavior or absenteeism, at times, but not for a continuous 12-month period." (AR 19). An impairment does not sustain a finding of disability unless it "lasted or [is] expected to last for a continuous period of at least 12 months," 20 C.F.R. § 404.1509, and the ALJ must explain "clearly in the denial rationale" if a claim is denied for that reason. *McKinley v. Colvin*, No. 2:13-CV-485-PRC, 2015 WL 404565, at *7 (N.D. Ind. Jan. 28, 2015) (quoting SSR 82–52, 1982 WL 31376, at *3 (Jan. 1, 1982)). The ALJ's remark was confusing, because it was

11

immediately followed by a discussion of the medical records cited above, demonstrating that Plaintiff was consistently treated for migraines between January 2019 and February 2020. (*See* AR 19). Toward the end of the year, the migraines seemed to be improving (*see* AR 568, 573), but there was no record (or explanation from the ALJ) explaining why they would not still cause work limitations. To the extent the ALJ found that Plaintiff's headaches did not meet the 12-month requirement, that finding was not adequately explained nor supported by substantial evidence.

The ALJ did ultimately find that Plaintiff's migraines were a severe impairment (AR 14), but how they factored into the RFC is unclear. A "severe impairment," by definition, "significantly limit[ed] [Plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(c). In the RFC, Plaintiff was limited to sedentary work with further "restrictions that limit physical stressors that would aggravate the claimant's symptoms" (AR 20), such as avoiding heights. The ALJ stated that these limitations were "supported by" Plaintiff's "headaches[] and related dizziness," among other ailments. (AR 21). It appears the restriction on heights was intended to prevent injury or additional dizziness from the migraines. Even so, there was no limitation relating to Plaintiff's alleged need to lie down for extended periods. The ALJ needed to at least "consider" the need to lie down in crafting the RFC and explain why a corresponding limitation was not included. *See Denton v. Astrue*, 596 F.3d 419, 423-24 (7th Cir. 2010).

The ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms, including migraines, were "not entirely consistent with the medical evidence and other evidence in the record." (AR 18). The ALJ stated that evidence of Plaintiff's physical strength undermined her claims of migraines: "[T]he generally normal strength findings over multiple examinations do not lend support to the claimant's testimony that she has migraines four to five days per week that last eight to 12 hours [or] that she is in bed when she has

migraines." (AR 20). The ALJ seemed to think Plaintiff claimed she was lying in bed purely because the migraine sapped her strength. But Plaintiff did not report that or testify to that (*see* AR 54-84, 232-240, 266-273), nor did the ALJ point to a medical opinion suggesting that, so any negative inference was not warranted. *Zurawski*, 245 F.3d at 887 (when considering subjective complaints, the ALJ needs to "explain[] the inconsistencies" between the complaints and the medical evidence). It seems equally plausible, if not more so, that she lies down to minimize the discomfort of the migraine.

The ALJ also noted that in August 2017, results of a brain MRI were unremarkable[9], and "it does not appear that limitations from migraines resulted in significant Cranial Nerve abnormalities or focal neural deficits." (AR 19-20, citing, *e.g.*, AR 363). Plaintiff reported that the migraines caused vision issues (AR 240, 273), so the ALJ was justified in saying that evidence of no "focal neural deficits" was inconsistent. But there was no basis to conclude that this discredited Plaintiff's reported symptoms of migraine pain and fatigue. In fact, the nurse who made most of those findings was the one who opined that Plaintiff's migraines would prevent her from working. (*See* AR 548). Even leaving aside Plaintiff's testimony, the ALJ did not build the required "logical bridge" from the record to the conclusion that her severe migraines created no work limitations. *Beardsley*, 758 F.3d at 837. On remand, the ALJ must account for Plaintiff's migraines in the RFC, or clearly explain why they do not need to be accounted for.

## III.     Award of Benefits.

Plaintiff requests remand for an award of benefits. "Courts have the statutory power to affirm, reverse, or modify the Social Security Administration's decision, with or without

---

[9] Reliance on an "'unremarkable' [] MRI as evidence that [] migraines were not a significant problem is not supportable. . . . Doctors use MRIs to rule out other possible causes of headache—such as a tumor—meaning that an unremarkable MRI is completely consistent with a migraine diagnosis." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014).

remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Nonetheless, "[a]n award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.* at 415. Although the ALJ made errors in evaluating the evidence, the record does not clearly show that Plaintiff is disabled as defined in the Social Security Act, so the Court declines Plaintiff's request to award benefits and remands the case for further proceedings.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Opening Brief [DE 18] and **REMANDS** the decision of the Commissioner of the Social Security Administration. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 26th day of August, 2022.

    s/ Joshua P. Kolar
    MAGISTRATE JUDGE JOSHUA P. KOLAR
    UNITED STATES DISTRICT COURT